in the cases piled flatwise. Notwithstanding the knowledge thus possessed by the libellants as to the piling flatwise, in one pile, of seven of the cases, they receipted for the twelve cases as in good order.

The libellants fail to show that the damage to the glass was caused by the piling of the seven cases flatwise, or by any other negligence on the part of the vessel, and the libel must be dismissed, with costs.

## Case No. 3,771.

DELIESSHINE v. The FRIENDSHIP.

[See Case No. 13,807.]

DELIESSELINE (ELKISON v.). See Case No. 4,366.

## Case No. 3,772.

The DELIGHT.

[Blatchf. Pr. Cas. 145.][1]

District Court, S. D. New York. April, 1862.

PRIZE.

Vessel and cargo condemned as enemy property, and for a violation of the blockade.

In admiralty.

BETTS, District Judge. This schooner, with a fishing seine and property on board of her, was captured, as prize, by the United States steamer New London, in Mississippi sound, on the 11th of December, 1861, fifty or sixty miles below New Orleans. The vessel was appraised by a naval board of survey, and appropriated to the use of the United States, on that valuation, by the United States flag officer in command in that vicinity, as necessary to the public service; and the property seized was transmitted by the seizing officer to this port, in the United States steamer Massachusetts, to be proceeded against within this jurisdiction. The documentary title to the schooner shows that she was transferred from her American ownership, and enrolled and licensed to citizens of the Confederate States, in the port of New Orleans, in April, 1861. She came out of New Orleans having on board a pass from the Confederate government, a rebel flag, and an old flag of the United States, which had been used on board of her before the Rebellion. She left New Orleans the 2d of December, 1861. The vessel and the articles on board were the property of residents of New Orleans. All the crew on the schooner had known, for four or five months, that New Orleans was blockaded, and that the United States vessels were lying before the place to maintain the blockade. The schooner was to return to New Orleans with the fish taken, for a market. The vessel and her equipments being indisputably enemy property, having also evaded the blockade of New Orleans, and being engaged in

procuring supplies for an enemy port, to be conveyed thence for the use of public enemies, the vessel and all the property seized on board are subject to forfeiture for those causes. Judgment entered accordingly.

## Case No. 3,773.

DELILAH et al. v. JACOBS et al.

[4 Cranch, C. C. 238.][1]

Circuit Court, District of Columbia. Oct. Term, 1832.

SLAVERY—RIGHTS ACQUIRED UNDER FOREIGN LAW —IMPORTATION OF SLAVES.

1. Where civil rights are acquired under a foreign law, this court will enforce them.

2. The compact between Virginia and Maryland, does not prevent Maryland from prohibiting the importation of Virginia slaves from Virginia.

This was a suit for freedom. The plaintiffs [negro Delilah and others] claimed their freedom under the law of Maryland of 1796 (chapter 67), or the act of 1783, by being imported from Virginia into Maryland by a Mr. Childs, a citizen and resident of Maryland, who gave no list of them to be recorded, &c.

Mr. Neale, for defendants [George Jacobs and others], contended that this was a penal law of Maryland, which this court, sitting in this county, could not enforce.

But THE COURT (nem. con.) said, that where civil rights are acquired under a foreign law, this court will enforce them; and that this point in regard to the right of freedom, had been frequently decided by this court.

Mr. Neale also cited the 12th section of the compact between Virginia and Maryland, which authorizes the citizens of each state to bring their effects into the other state free of duty; and contended that Maryland could not prohibit her own citizens from bringing their slaves from Virginia into Maryland.

But THE COURT (nem. con.) said that the compact only prohibited the imposition of duties by Maryland, on the goods of citizens of Virginia, brought from Virginia, and vice versa, but did not prohibit Maryland from prohibiting her own citizens from importing slaves, or any other property, belonging to them.

## Case No. 3,774.

In re DELL.

[5 Sawy. 344.][2]

District Court, D. California. Dec. 24, 1878.

BANKRUPTCY — PROOF AGAINST SEPARATE ESTATE OF PARTNERS.

Where, out of a firm of four partners two were insolvent and one was bankrupt, and the

[1] [Reported by Samuel Blatchford, Esq.]

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

fourth partner paid off and discharged out of his separate estate all the firm debts: *Held*, that he was entitled to prove against the separate estate of the bankrupt one half of the amount so paid by him.

James C. Perkins, for assignee.
R. Thompson, for Baldwin.

HOFFMAN, District Judge. It appears from the testimony taken by the register that the bankrupt was a member of a firm consisting of four partners; of these, two are insolvent, and one is a bankrupt. Baldwin, the remaining partner, has paid off and discharged all the firm debts out of his separate estate, and he now asks to be allowed to prove against the estate of the bankrupt, concurrently with his separate creditors, for one half of the firm debts paid by him. The partnership has been dissolved and its affairs wound up and completely settled. I have not been referred to any case under the late or earlier bankrupt laws of the United States where the question thus raised has been decided.

It seems to be well settled in England that a partner who has paid all the firm debts may prove against the estate of his bankrupt associate for the share which the latter ought to have paid; what that share is seems to be open to question. Mr. Parsons inclines to the opinion that the bankrupt estate is only liable for the share or proportion which would be due from the partner if all the members of the firm were solvent; he admits, however, that Lord Eldon was of a contrary opinion, and held that the equity of the solvent party who had discharged all the firm debts, to treat the bankrupt partner as a co-surety continued after the bankruptcy. Pars. Partn. 476.

Mr. Robson, in his very valuable work on the Laws of Bankruptcy, observes: "If one, either before or after the bankruptcy, pays all the joint debts, he will be entitled to prove as a surety against the separate estate of his copartners for the share which the latter ought to have paid;" and for this he cites numerous cases. Robs. Bankr. 527. And on page 528 he says: "If one partner pays all the joint creditors he is entitled to contribution from the others according to their respective shares; but if any one of them is unable to pay his share of the debts the others must bear his proportion equally amongst them; and, therefore, a partner paying the joint debts will be entitled to prove against the separate estate of a co-partner, not merely in respect to his share thereof, but also for a proportion of the share thereof of which any other partner ought to but is unable to pay." In a note, after citing several cases, he observes that Ex parte Watson, in which Sir J. Leach held a contrary doctrine (Buck, 449), may be considered overruled.

I have examined all the cases referred to by Mr. Robson. They are not as explicit and decisive as could be wished, but they seem fairly to justify the doctrine enunciated in the text. See Ex parte Moore, 2 Gly. & J. 190; Ex parte Hunter, Buck, 552; and Ex parte Plowden, 3 More. & A. 402. See, also, Colly. Partn. § 986; Story, Partn. § 407.

I think, therefore, that the proof offered should be admitted.

---

## Case No. 3,775.

### DELOACH v. DIXON et al.

[Hempst. 428.][1]

Circuit Court, D. Arkansas. Aug. Term, 1840.

JOINT AND SEVERAL CONTRACT — ACTIONS ON — PARTIES — DISCONTINUANCE AND NOLLE PROSEQUI.

1. In a suit on a joint and several contract the plaintiff may sue all or one or any intermediate number of the co-contractors, although he could not do so at the common law. The statute of Arkansas authorizes this proceeding.

2. The plaintiff may, after bringing suit against all, discontinue as to any defendant before final judgment, although he may be served with process, and this will not operate as a discontinuance of the action, nor can the other defendants avail themselves of it.

3. A discontinuance and nolle prosequi stand on the same ground; neither operating like a retraxit to release and bar the cause of action.

4. A nolle prosequi amounts to no more than an agreement not to proceed further in that suit as to the particular person or cause of action to which it is applied, but does not prevent the commencement of a future suit.

A. Fowler, for plaintiff.
Chester Ashley and George C. Watkins, for defendants.

OPINION OF THE COURT. This is an action of assumpsit, brought by the plaintiff [Isaac Deloach] against the defendants [Thomas Dixon, William Strong, and Thomas J. Curl] upon an assignment by them to the plaintiff of a promissory note, which, after presentment and demand for payment to the makers, they failed and refused to pay. The process having been served on all the defendants, they pleaded in abatement that Dixon was not a citizen of Arkansas at the commencement of the suit. The plaintiff thereupon discontinued his suit against him; and the defendants move the court to enter final judgment for them against the plaintiff; and whether this motion ought to be sustained is the only question to be now considered.

The defendants contend that as the action is founded on a contract, the discontinuance of the suit against one of the joint contractors after service of process on all, operates as a discharge and release of all the defendants from liability, and hence that final judgment should go in their favor. They further contend that the plaintiff can maintain an action against all or one only of the defendants, and not against an intermediate number; and, moreover, as he could not origi-

[1] [Reported by Samuel H. Hempstead, Esq.]